IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Bobby S. Thomas, #281744, )<br> )<br>            Petitioner,  )<br> )<br>   vs.              )<br> )<br>Stan Burtt, Warden of       )<br>Lieber Corr. Inst.,         )<br> )<br>            Respondent.  )<br>_____) | Civil Action No. 6:07-1377-HMH-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

The record reveals that the petitioner is currently confined in the South Carolina Department of Corrections pursuant to orders of commitment of the Florence County Clerk of Court. The petitioner was indicted at the July 2001 term of the Florence County Grand Jury for criminal sexual conduct with a minor, first degree; assault and battery with intent to kill; kidnaping; and two counts of unlawful conduct toward a child (2001-GS-21-1191). He was also indicted in January 2002 for lewd act on a minor and first degree burglary (2002-GS-21-235). He was represented by attorney Michael S. Bell. On February 6, 2002, the petitioner pleaded guilty to the stated charges, with the exception that

the burglary charge was reduced to a second degree burglary. He was sentenced by the Honorable B. Hicks Harwell, Jr., to confinement for a period of 30 years for criminal sexual conduct with a minor, first degree; 20 years, consecutive, for assault and battery with intent to kill; 30 years, consecutive, for kidnaping; 10 years, consecutive, for each unlawful conduct toward a child; 15 years, consecutive, for lewd act on a minor; and 15 years, consecutive, for second degree burglary.

A timely notice of appeal was filed on the petitioner's behalf and an appeal was perfected. The petitioner was represented by Tara Taggart of the South Carolina Office of Appellate Defense. In the Final Brief of Appellant, the following issues were raised:

> (1) Whether the trial court lacked subject matter jurisdiction for two counts of unlawful conduct towards a child because the indictment failed to sufficiently state the offense.
>
> (2) Whether appellant's guilty plea should be set aside where two of the seven counts to which he pleaded guilty were improperly before the court, rendering the entire plea involuntary, unknowing and unintelligent.

Final Brief of Appellant, p. 3. The South Carolina Court of Appeals affirmed the petitioner's conviction and sentence. *State v. Bobby S. Thomas*, Op. No. 2003-UP-219 (S.C. Ct. App. filed 2003). The remittitur was entered on April 7, 2003.

In May 2006, the petitioner filed an application for post-conviction relief in Florence County. *Thomas v. State*, 2003-CP-21-929. In the application, he alleged:

> (1) Ineffective assistance of counsel.
>
> I. Counsel failed to inform Applicant of the relevant law under the facts and circumstances of the case.
>
> ii. Counsel failed to investigate and inform Applicant of viable defenses.
>
> iii. Counsel failed to inform Applicant that the statement may be involuntary.

> > iv. Counsel failed to argue the Applicant's role with the children as caretaker was incidental and did not rise to the level of parent or guardian.
>
> (2) Ineffective assistance of appellate counsel.
>
> > I. Failed to raise issue that through the guilty plea, the state received a substantial benefit and the Applicant was entitled to receive a substantial benefit in return.
>
> (3) Guilty plea was not knowing, voluntary and intelligent through ineffective assistance of counsel.
>
> > I. Applicant did not have the requisite understanding of the relevant law as applied to the particular facts of Applicant's case and defenses in order to make a knowing and voluntary decision on how to proceed.
>
> (4) Sentencing structure is in violation of the S.C. Constitution.
>
> > I. Sentencing statute was enacted in violation of the S.C. Constitution.

The respondents made a return on November 20, 2007. On October 14, 2004, an evidentiary hearing was convened before the Honorable James Brogdon. The petitioner was present and represented by Scott Floyd. The respondent was represented by Julie Thames of the Attorney General's Office. Testimony was received from the petitioner and his plea counsel, Michael Bell.

At the PCR evidentiary hearing, the petitioner testified that trial counsel should have explored whether the children were in his control or custody when he took them swimming before he committed the offenses at issue. He testified that he was not with the children very often and that he was not their caretaker. The petitioner testified that trial counsel advised him that he would receive the maximum time if he went to trial . He said counsel advised him to plead guilty because he would get less time than if he went to trial and was convicted. He also testified that right before the plea, the solicitor was talking about a plea and said the petitioner could get 20 to 30 years if all the sentences were

concurrent. The petitioner testified that trial counsel did explain the difference between concurrent and consecutive sentences. The petitioner also testified that the witness to the burglary charge could not have identified him as he climbed through the window because she was 60 to 70 years old and could not have seen him well enough to identify him.[1] Lastly, the petitioner testified that he should not have been charged with lewd act because the child was his stepdaughter and he was just playing a video game with her and there was no lewd act.

Trial counsel Michael Bell testified at the PCR hearing that the petitioner was facing very serious charges in that the victim of the criminal sexual conduct charge suffered extreme physical and psychological damage as a result of the assault. Trial counsel testified that he tried to get the solicitor to throw out the unlawful neglect charges but the solicitor would not agree. Trial counsel also testified that the lewd act charge did bother him. He testified that the burglary charge arose because there was an order of protection prohibiting the petitioner from contact with his wife, but he climbed in the house through the window and the victim, his ex-wife, identified him.

Trial counsel testified that he discussed the charges and sentences with the petitioner and that he tried to advise the petitioner as to what would give him a chance to see the light of day. He testified that he told the petitioner that if he went to trial, a jury would likely find him guilty and that he would probably get the maximum and that his only hope of someday getting out of prison would be for the judge to give him 30 years concurrent. Counsel testified that he saw a plea and begging for a concurrent sentence as his only chance, considering how serious the charges were. Trial counsel testified that he discussed these issues with the petitioner and the petitioner's mother. He testified that he saw a plea and concurrent sentences as the petitioner's only chance, but it did not happen.

---

[1] This witness was not mentioned at the guilty plea hearing. The petitioner's wife and daughter were in the home when the petitioner climbed in through the window.

4

He also testified that he spoke with the petitioner and the petitioner's mother about the fact that even if he were to someday get out of prison, he would still have to face the sexual predator law and would have to register as a sex offender. Trial counsel testified, and the record reflects, that he asked the judge to run the sentences concurrently.

Trial counsel testified that the petitioner was evaluated for competency and the report issued from that evaluation found that the petitioner was competent to stand trial, that he did have the ability to differentiate right from wrong at the time of the offense, and that he did have the capacity to conform his conduct to the requirements of the law at the time of the offense. In addition, a Blair hearing was held prior to the plea being taken. Trial counsel also testified that he went over the possibility of a guilty but mentally ill verdict and told the petitioner that if he were found guilty but mentally ill, he would serve his sentence in the state hospital.

Trial counsel testified that he tried to get some charges dropped, that he tried to get concurrent sentences, and that he tried to work out a plea deal, but that the charges were so egregious that he had no success in trying to work out a deal. He testified that he advised the petitioner that the only likely way he could get a lighter sentence would be to plead. Lastly, trial counsel testified that the decision to plead guilty was the petitioner's. He testified that he advised the petitioner that the judge could run the sentences consecutively.

On December 4, 2004, Judge Brogdon entered his order of dismissal. In its pertinent part, Judge Brogdon concluded:

> **IV. FINDINGS OF FACT AND CONCLUSIONS OF LAW**
> This Court has reviewed the testimony presented at the evidentiary hearing, observed the witnesses presented at the hearing, passed upon their credibility, and weighed the testimony accordingly. Further, this Court reviewed the Clerk of Court records regarding the subject conviction, the Applicant's records from the South Carolina Department of Corrections, the application for post-conviction relief, the guilty plea and

5

sentencing transcripts, and legal arguments of counsel. Pursuant to S.C. Code Ann. § 17-27-80 (1985), this Court makes the following findings of fact based upon all of the probative evidence presented.

The allegation that trial counsel's representation fell below reasonable professional norms is without merit. This Court finds that trial counsel made every effort to work out a deal for the Applicant, but that these efforts failed, largely because the solicitor was not willing offer the Applicant a deal due to the nature of the offenses. Trial counsel explained the charges and sentences to the Applicant. He advised the Applicant that the only possibility of someday getting out of prison would be *if* the judge would run the sentences concurrently. This Court finds that trial counsel rendered reasonable assistance to the Applicant and that he demonstrated skill, knowledge and professional judgment in his efforts to help the Applicant in a very difficult case with many aggravating factors. Strickland v. Washington, supra.

This Court finds that the allegation that appellate counsel was ineffective is without merit. The allegation in the application contends that appellate counsel was constitutionally ineffective and prejudiced the appellant "Through appellate counsel's failure to raise the issue that through Applicant's guilty plea the State received a substantial benefit and that Applicant was entitled to receive a substantial benefit in return." The Applicant did not address any allegations of ineffective assistance of appellate counsel at the PCR hearing. The Applicant has not met his burden of proof to show that appellate counsel was deficient in his representation, nor has he shown any resulting prejudice. Southerland v. State, supra. Further, the failure to raise issues does not automatically render appellate counsel ineffective. Jones v. Barnes, supra.

This Court finds that the decision to plead guilty was the Applicant's and that the Applicant was questioned thoroughly by the Court about the voluntariness of his plea. His answers convinced the judge that the Applicant made the decision of his own free will. This Court further finds that the guilty plea transcript shows that the Applicant understood the consequences of a guilty plea, his Constitutional rights, and the possible sentences. This Court finds that trial counsel was not deficient in his representation and performed well within reasonable professional norms for a criminal defense attorney. The charges and the possible sentences were explained to the Applicant. The plea judge went over his Constitutional rights, including his right to a jury trial, his right to remain silent, and

> his right to confront his accusers. The Applicant answered all of the plea judge's questions and stated that he understood his rights, that he was guilty, and that it was his decision to plead guilty. This Court finds that there was no coercion to plead guilty and that the Applicant did so voluntarily, with knowledge of the consequences of his actions. Boykin v. Alabama, supra. This Court further finds the Applicant failed to carry his burden of proof to show that but for trial counsel's alleged deficient representation he would have not pled guilty but would have insisted on going to trial. Roscoe v. State, supra. Accordingly, the allegation of involuntary guilty plea resulting from the allegation of ineffective assistance of counsel is denied.
>
> **CONCLUSION**
> This Court concludes that the Applicant failed to carry his burden of proof to show that trial counsel's representation fell below reasonable professional norms or that he was prejudiced by the alleged deficient representation. The Applicant's former trial counsel rendered reasonably effective assistance under prevailing professional norms and demonstrated a normal degree of skill, knowledge, and professional judgment that is expected of an attorney in a criminal case. Strickland v. Washington, supra; Cherry v. State, supra. Additionally, the Applicant did not carry his burden to show a reasonable probability that the result at trial would have been different had trial counsel done what the applicant alleges should or should not have done. Johnson v. State, supra. As to any and all allegations, which were or could have been raised in the application or at the hearing in this matter, but were not specifically addressed in this Order, this Court finds that the Applicant failed to present any probative evidence regarding such allegations. This includes the allegation in the application that the sentence structure violates the South Carolina Constitution. This allegation is not supported by any law and was not addressed at the hearing. Accordingly, this Court finds that the Applicant waived such allegations and failed to meet his burden of proof regarding them. Accordingly, they are denied and dismissed with prejudice.

(App. 97-100).

The petitioner made an appeal to the South Carolina Supreme Court. In the appeal, he was represented by Robert M. Pachak. On June 1, 2005, counsel made a *Johnson* petition for writ of certiorari and petition to be relieved as counsel, asserting as the sole arguable claim"whether petitioner's guilty plea complied with the mandates of *Boykin*

*v. Alabama*?" The petitioner made a *pro se* petition in response on July 11, 2005, asserting:

> (1) The Post Conviction Relief hearing judge erred in denying Petitioner relief when the evidence supports that trial counsel had misinformed petitioner that he would receive a lighter sentence if he pled guilty.
>
> (2) The Post Conviction Relief hearing judge erred in denying relief when the evidence clearly reveals that Petitioner's testimony established prejudice?

On November 2, 2006, the South Carolina Supreme Court entered its order denying the petition and granting counsel's request to be relieved pursuant to *Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988). On November 20, 2006, the remittitur was entered.

In his petition now before this court, the petitioner raises the following five allegations:

> (1) The lower court decision was contrary to well established federal law in denying Petitioner relief when the evidence supports that trial counsel had misinformed Petitioner he would receive a light sentence if he pled guilty?
>
> (2) The lower court decision was contrary to well established federal law in denying Petitioner relief when the evidence clearly reveals that Petitioner's testimony established prejudice?
>
> (3) The lower court decision was contrary to well established federal law with the mandates set forth in Boykin v. Alabama?
>
> (4) Did the lower court lack subject matter jurisdiction for two counts of unlawful conduct towards a child because the indictment failed to sufficiently state the offense?
>
> (5) Did the lower court err in denying that petitioner's guilty plea should be set aside where two of the seven counts to which he pled guilty were improperly before the court, rendering the entire plea involuntary, unknowing, and unintelligent?

On October 15, 2007, the respondents filed a motion for summary judgment. By order filed October 16, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.

8

1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his opposition to the motion for summary judgment on November 19, 2007.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

## ANALYSIS

*Ground One*

In ground one, the petitioner alleges that his trial counsel misinformed him that he would receive a light sentence if he pleaded guilty. Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell

9

below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Review of counsel's performance is "highly deferential." *Id.* at 689. With respect to guilty plea counsel, a petitioner must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

> In rejecting this claim, the State PCR judge held:
>
> The allegation that trial counsel's representation fell below reasonable professional norms is without merit. This Court finds that trial counsel made every effort to work out a deal for the Applicant, but that these efforts failed, largely because the solicitor was not willing offer the Applicant a deal due to the nature of the offenses. Trial counsel explained the charges and sentences to the Applicant. He advised the Applicant that the only possibility of someday getting out of prison would be *if* the judge would run the sentences concurrently. This Court finds that trial counsel rendered reasonable assistance to the Applicant and that he demonstrated skill, knowledge and professional judgment in his efforts to help the Applicant in a very difficult case with many aggravating factors. *Strickland v. Washington, supra*.

(App. 98).

Counsel Bell testified at the PCR hearing that he was faced with an insurmountable factual case of guilt on the charges and determined that a maximum sentence was likely if he went to trial. His strategy was to beg for mercy from the court in his request for concurrent sentences. He made the petitioner aware that there was no

guarantee that the plea would result in a concurrent sentence, and the State was opposing the sentence to be anything other than a maximum sentence (App. 79-85). At the PCR hearing, the petitioner admitted that his counsel explained the difference between concurrent and consecutive sentences (App. 77). However, he claimed that his counsel told him he would get less time by pleading guilty rather than going to trial (App. 76).

The record at the plea also supports rejection of this claim. During the guilty plea, the record revealed that the plea agreement was entered as a straight up plea (App. 5, 11-12). The trial judge made a specific inquiry with the petitioner about his understanding of the charges and the possible punishment (App. 14-19). The petitioner admitted that his lawyer had explained to him the charges and the possible punishment (App. 24-25). After a thorough inquiry, the state plea judge determined that the petitioner's plea was freely and voluntarily entered (App. 26). The solicitor urged the court that it was the State's position that the case did not warrant leniency and did not warrant concurrent sentences (App. 35). Evidence was presented to reveal why the State felt that the sentences should be consecutive (App. 35-40). After a plea in mitigation from family of the petitioner, Counsel Bell asked for a concurrent sentence because he had saved the State and the family the anguish of a trial. The court stated that because of the egregiousness of the offenses, he found the only mitigating factor was that he did not kill the children (App. 47). He felt under the facts and circumstances that he would not subject the public to the risk that the petitioner could conform his behavior in the future. *Id.* Counsel Bell again asked Judge Harwell to reconsider, but Judge Harwell concluded that there was no justification for concurrent sentences (App. 49).

The petitioner has failed to show he would not have pleaded guilty and would have insisted on a trial. The record of the plea conclusively shows it was also his intent to not have a trial. As the petitioner has not shown that his plea counsel's performance was deficient or that he was prejudiced by his counsel's performance, the claim fails.

11

*Ground Two*

In his second allegation, the petitioner claims that his testimony established Sixth Amendment prejudice. As discussed above, the petitioner did not prove deficient performance by his plea counsel, and he also failed to prove any reasonable probability that he would have insisted on a trial rather than a plea, as required under *Hill*. Instead, the record reveals that "he never wanted a trial...he has never said he wanted one, in fact he was begging to come up here and plead; and we would not let him until we got this report . . . ." (App. 45-46). Accordingly, this claim also fails.

*Ground Three*

In his third allegation, the petitioner claims that his plea did not meet the mandates of *Boykin v. Alabama*. To find a guilty plea is voluntarily and knowingly entered into, the record must establish the applicant had a full understanding of the consequences of his plea and the charges against him. *Boykin v. Alabama*, 395 U.S. 238 (1969). In *Boykin*, the United States Supreme Court held that before a court can accept a guilty plea, an applicant must be advised of the constitutional rights he is waiving. *Id*. at 243. Specifically, an applicant must be aware of the privilege against self- incrimination, the right to a jury trial, and the right to confront one's accusers. *Id.* A defendant entering a guilty plea must be aware of the nature and crucial elements of the offense, the maximum and any mandatory minimum penalty, and the nature of the constitutional rights being waived. *Pittman v. State*, 524 S.E.2d 623, 624 (S.C. 1999). A guilty plea is a solemn, judicial admission of the truth of the charges against the applicant. Statements made during the plea should be considered conclusive unless the applicant presents reasons why he should be allowed to depart from the truth of those statements. *Edmonds v. Lewis*, 546 F.2d 566, 567-68 (4th Cir. 1976). An applicant's knowing and voluntary waiver of statutory or constitutional rights must be established by a complete record and "'may be accomplished

by colloquy between court and applicant, between court and applicant's counsel, or both.'" *Roddy v. State*, 528 S.E.2d 418, 421 (S.C. 2000) (quoting *State v. Ray*, 427 S.E.2d 171, 174 (S.C. 1993)).

The plea transcript reveals that the trial judge engaged in extensive questioning of the petitioner prior to accepting the plea. The petitioner was questioned on whether he understood the nature and consequences of the charges against him, the range of punishment for the offenses, and whether he was aware of the constitutional rights he was waiving by the entry of the plea, including the presumption of innocence, the right to a jury trial, the right to testify, the right to remain silent, the right to confront the accusers, and the right to subpoena witnesses. He admitted he understood all of the charges against him, that he understood everything told him by the judge, that he did not require further explanation, that he was satisfied with the services of his counsel, and he had no complaints against any other party. He was questioned as to whether any promises had been made to him and whether he had been threatened, which he denied (App. 14-26). He then admitted that he committed the crimes (App. 26). The plea court determined the plea was knowingly and voluntarily entered (App. 26).

The PCR judge found as follows:

> This Court further finds that the guilty plea transcript shows that the Applicant understood the consequences of a guilty plea, his Constitutional rights, and the possible sentences. . . . The charges and the possible sentences were explained to the Applicant. The plea judge went over his Constitutional rights, including his right to a jury trial, his right to remain silent, and his right to confront his accusers. The Applicant answered all of the plea judge's questions and stated that he understood his rights, that he was guilty, and that it was his decision to plead guilty. This Court finds that there was no coercion to plead guilty and that the Applicant did so voluntarily, with knowledge of the consequences of his actions. *Boykin v. Alabama, supra*.

(App. 94-95, 99).

As the state court's decision was not contrary to and did not involve an unreasonable application of clearly established federal law and as the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, this claim fails.

*Ground Four*

In his fourth allegation, the petitioner contends the plea court lacked subject matter jurisdiction for the two counts of unlawful conduct toward a child because the indictment failed to sufficiently state the offense. On direct appeal, this issue was resolved against the petitioner as a matter of state law. The South Carolina Court of Appeals held that "the indictment at issue alleged that Thomas committed unlawful acts towards two children while they were in his care. It would have been up to him to assert that his role as their caretaker was incidental and did not rise to the level of parent or guardian. We therefore hold that the trial court had jurisdiction to accept his guilty pleas to the two counts of unlawful conduct towards a child" (App. 56-57). The respondents argue that this issue is not properly before this court in a habeas setting since it is purely a state law matter. This court agrees. A state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter which is cognizable in federal habeas corpus absent a showing of a "complete miscarriage of justice." *Wright v. Angelone,* 151 F.3d 151, 158 (4th Cir. 1998). Claims involving the application and interpretation of a state statute and state court rules are not cognizable in federal habeas actions. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) (holding "[i]t is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."). Habeas corpus relief is available to a state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "'[F]ederal habeas corpus relief does not lie for errors of state law.'" *Estelle,* 502 U.S. at 67

14

(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Based upon the foregoing, this allegation should be dismissed.

***Ground Five***

In his final claim, he asserts that based upon the claim in allegation four, two of his counts were improperly before the court and, therefore, his plea was not intelligently entered. This was raised in the direct appeal and rejected by the South Carolina Court of Appeals. Particularly, the court held,"Because we have held the indictment in question sufficiently stated those two counts, it follows that those charges were properly before the trial court and could not have rendered his pleas to the other offenses involuntary, unknowing, or unintelligent" (App. 57). Again, as argued by the respondent, since this state law determination resolved the issue, the petitioner's claim should be dismissed.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

March 3, 2008

Greenville, South Carolina

15